UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

In re:
                                        CASE NO. 03-22084
RONALD A. PULVER,
d/b/a R.A. Pulver Trucking,
                        Debtor.         DECISION & ORDER
─────────────────────────────────

MARY ANN GATTALARO,

                        Plaintiff,

            V.                          AP #04-2165

RONALD A. PULVER,

                        Defendant.

─────────────────────────────────

## BACKGROUND

On May 23, 2003, Ronald A. Pulver (the "Debtor") filed a
petition initiating a Chapter 13 case, which was converted to a
Chapter 7 case on August 3, 2004.

On October 20, 2004, Mary Ann Gattalaro ("Gattalaro"), the
Debtor's former spouse, commenced an Adversary Proceeding to have
the Court determine to be nondischargeable, pursuant to Sections
523(a)(2)(A), 523(a)(5) and/or 523(a)(15): (1) an awarded, but not
yet separately entered, judgment against the Debtor for the unpaid
balance due on a home equity line of credit mortgage against the
parties' former residence, together with interest from August 17,
2001 (the "Home Equity Judgment"); and (2) an April 10, 2003

judgment in the amount of $66,090.45 (the "Matrimonial Judgment"),[1]

both granted by the Monroe County Supreme Court (the "State Court")

as part of a "Judgment of Divorce."

The Original Complaint in the Adversary Proceeding, which

included a copy of the Judgment of Divorce, alleged that: (1) the

---

[1]     With respect to the principal amount of the Matrimonial Judgment, the
Judgment of Divorce specifically provided that:

> "The Court directs that the Plaintiff have judgment against the
> Defendant in the amount of $57,219.11, together with interest
> commencing on the date of the commencement of the action, at the
> rate of nine percent (9%), until paid. Said judgment was calculated
> as follows:

| | | |
|---|---|---|
| (a) | One-half of the Brown and Company check withdrawals deposited in Defendant's bank accounts prior to the commencement of the divorce action | |
| | | $31,871.48 |
| (b) | One-half of the Brown and Company Datek transfers following the service of the Temporary Restraining Order | |
| | | $ 7,250.00 |
| (c) | One-half of the proceeds of Plaintiff's personal injury award provided to the Defendant but not invested and expended as agreed | |
| | | $ 5,000.00 |
| (d) | One-half of the Defendant's down payment paid to lease the 2002 Jeep after the Temporary Restraining Order was made | |
| | | $ 1,250.00 |
| (e) | One-half of the value of the SEP IRA account of the Defendant at the time of redemption | |
| | | $11,847.63 |
| | TOTAL | $57,219.11" |

**Page 2**

State Court had made a number of specific findings of misrepresentations, false pretenses, false representations, contemptuous conduct and actual fraud by the Debtor in the matrimonial action, which resulted in the Home Equity and Matrimonial Judgments that were included in the Judgment of Divorce,[2] after it had conducted a trial for several days; (2) the Debtor had obtained money and property from Gattalaro by false pretenses, false representations and actual fraud, so that the amounts due on the Home Equity and Matrimonial Judgments were nondischargeable pursuant to Section 523(a)(2); and (3) some of the amounts due Gattalaro, if not determined to be based upon fraud, may otherwise be nondischargeable under Section 523(a)(5), because they were in the nature of alimony, maintenance or support, or under Section 523(a)(15).

On November 22, 2004, the Debtor interposed an Answer which asserted, as an affirmative defense, that the amounts due on the Home Equity and Matrimonial Judgments were not in the nature of alimony, maintenance or support, but were equitable distribution.

Prior to a December 14, 2004 pretrial conference conducted by the Court, the attorney for Gattalaro filed a copy of the Findings with the Court, along with a letter which asserted that the

---

[2]     The Judgment of Divorce indicates that the State Court had previously rendered a decision, in writing, stating its Findings of Fact and Conclusions of Law (the "Findings").

Findings were sufficient to permit the Court to find that collateral estoppel applied and that the amounts due on the Home Equity and Matrimonial Judgments were nondischargeable pursuant to Section 523(a)(2)(A).[3]

On February 1, 2005, Gattalaro filed a Motion for Summary Judgment (the "Motion for Summary Judgment"), which asserted that: (1) the State Court made the Findings, attached as an exhibit to the Motion for Summary Judgment, after several days of trial; (2) after: (a) extensive discovery during which the Debtor was represented by counsel; and (b) the Debtor discharged his attorney, he participated in the trial by serving as his own attorney, entering exhibits into evidence and testifying on his own behalf; (3) regarding the Home Equity Judgment, the State Court specifically found that: (a) pursuant to a ante-nuptial agreement, the equity in the jointly owned marital residence was Gattalaro's separate property; (b) the Debtor induced her to execute the home

---

[3]     Section 523(a)(2)(A) provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523 (2005).

equity line of credit mortgage, representing that in no event would there be any draws against the line of credit without Gattalaro's specific consent and approval; (c) without her consent or approval, and without her knowledge, the Debtor drew against the home equity line of credit, resulting in a balance due on the line of credit and mortgage of $37,000.00; and (d) with the exception of $3,410.00, the draws on the line of credit were deposited by the Debtor into a bank account at the National Bank of Geneva maintained solely in his individual name; (4) regarding the Matrimonial Judgment, the State Court specifically found that between December 1999 and September 2001, the Debtor surreptitiously and unilaterally withdrew the sum of $98,242.96 in marital funds from the parties' joint Brown and Company Brokerage Account, which the Debtor deposited into a bank account at the National Bank of Geneva maintained solely in his individual name, so that the principal amount of $31,871.48, one-half of the amount withdrawn, was included in the principal amount of the Matrimonial Judgment (the "Brown and Company Award"); (5) the State Court specifically found that, after it had issued an August 2001 "Restraining Order" against him, the Debtor violated the Order by: (a) retaining for his own personal use: (i) $12,500.00 in funds distributed from the Brown and Company Brokerage Account; and (ii) $2,000.00 he withdrew from a joint Datek Account, all of which was

**Page 5**

marital property, so that the principal amount of $7,250.00, one-half of these amounts, was included in the Matrimonial Judgment; (b) selling a 1998 Jeep, which was marital property, and leasing a 2002 Jeep with a $2,500.00 down payment from the proceeds of the sale of the 1998 Jeep, so that the principal amount of $1,250.00, one-half of the down payment, was included in the Matrimonial Judgment; and (c) redeeming $23,695.29 from a SEP IRA account, which was marital property, so that the principal amount of $11,847.63, one-half of this amount, was included in the Matrimonial Judgment;[4] (6) the State Court found that the Debtor misrepresented that he would use $20,000.00 from a personal injury settlement that Gattalaro received in connection with a pre-marital injury to invest $15,000.00 on her behalf and pay $5,000.00 to purchase the Debtor's brother's interest in a co-owned boat, but the Debtor only invested $10,000.00 and did not purchase the co-owned interest in the boat, using $10,000.00 for his own personal use, so that the principal amount of $5,000.00, one-half of this amount, was included in the Matrimonial Judgment because of the Debtor's fraud and misrepresentation with regard to the $20,000.00 (the "Personal Injury Award"); and (7) the State Court's specific findings, after a trial, of misrepresentations, false pretenses,

---

[4]     The awards in the Matrimonial Judgment for transferring marital assets in violation of the Restraining Order are collectively referred to as the "Restraining Order Awards."

**Page 6**

false representations, contemptuous conduct and actual fraud, none of which the Debtor denied, warranted a determination that collateral estoppel applied and the Home Equity and Matrimonial Judgments were nondischargeable pursuant to Section 523(a)(2)(A).

The Debtor interposed a Response and Memorandum of Law (the "Summary Judgment Opposition") to the Motion for Summary Judgment, which asserted that: (1) the State Court's findings of misrepresentations and fraud were not binding on the Court; (2) many of the findings and awards represented by the Home Equity and Matrimonial Judgments were not based upon specific findings that all of the following elements of fraud (the "Required Element of Common Law Fraud") existed: (a) the Debtor made false representations; (b) the Debtor knew that the representations were false at the time they were made; (c) the Debtor made the misrepresentations with the intent to deceive the creditor; (d) the creditor justifiably relied upon the misrepresentations; and (e) the creditor sustained loss and damage; and (3) the Debtor represented himself at the State Court trial, which should be a consideration in the Court's determination of whether collateral estoppel applied.

In a Reply Affidavit, Gattalaro asserted that the ante-nuptial agreement entered into between the parties provided that the first $60,000.00 in equity in the marital residence was the separate

property of Gattalaro, so that the Debtor's impairment of that equity by his fraudulent draws on the home equity line of credit mortgage was not simply the impairment of equity in the marital residence that he had an equal right to.

At a February 16, 2005 oral argument in connection with the Motion for Summary Judgment, the Court: (1) indicated that the actions of the Debtor in connection with the Brown and Company Award appeared to be more in the nature of a conversion of Gattalaro's interest in that marital property, rather than in the nature of fraud; (2) asked the attorneys for Gattalaro and the Debtor whether spouses in New York had a cause of action for conversion of marital property in the absence of an action for divorce, in connection with which a New York matrimonial court might make an award of equitable distribution based in part upon the wasteful dissipation of assets; and (3) requested that the parties brief the issue when the attorneys disagreed on the answer to the Court's inquiry.

Subsequently, both Gattalaro and the Debtor filed a Memorandum of Law. The Debtor, in his Memorandum of Law, concluded that under New York Law spouses did not have an independent cause of action for the alleged conversion of marital assets by one spouse, but only had a cause of action in connection with equitable distribution for the wasteful dissipation of assets if and when a

**Page 8**

divorce action was commenced. Gattalaro, in her Memorandum of Law, concluded that, at a minimum, there was a right to sue a spouse for conversion, independent of a divorce action, when there is a specific bank account held jointly between the spouses and one spouse withdraws more than one-half of the funds on deposit in the account without the consent and approval of the other spouse.

On March 28, 2005, Gattalaro filed a Motion to Amend her Original Complaint (the "Motion to Amend"), to add causes of action under Section 523(a)(4) and 523(a)(6), which included an Amended Complaint and asserted that: (1) as clarified by oral argument in connection with the Motion for Summary Judgment, a number of the Debtor's actions might support a determination that all or part of the Home Equity and Matrimonial Judgments were nondischargeable pursuant to Section 523(a)(4) or Section 523(a)(6), because his actions were a conversion of and/or willful and malicious injury to Gattalaro and her property, including her interests in marital property; (2) the causes of action under Sections 523(a)(4) and 523(a)(6) arose out of the same conduct, transactions and occurrences as fully set forth in the Original Complaint; and (3) the Adversary Proceeding was still in the discovery stages, and there would be no prejudice suffered by the Debtor as a result of the amendment, which the Court should grant in the interest of justice.

**Page 9**

On April 6, 2005, the Debtor interposed Opposition to the Motion to Amend, which asserted that: (1) the Original Complaint did not include causes of action under Sections 523(a)(4) or 523(a)(6), and there was nothing in the Judgment of Divorce or the Findings, both of which were admittedly to have been a part of the Original Complaint, that determined that the Debtor was in any way acting as a fiduciary in connection with Gattalaro, or that his actions constituted a fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny; (2) there was nothing in the Judgment of Divorce or Findings that determined that the Debtor's actions constituted a willful and malicious injury, and there were no facts pled in the Original Complaint that supported such a finding; (3) there would be prejudice to the Debtor if the amendment were permitted, because he had incurred significant expenses in connection with the extensive discovery already conducted in the Adversary Proceeding and his opposition to the pending Motion for Summary Judgment; (4) the Amended Complaint failed to set forth the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure with respect to any new causes of action for fraud; and (5) there could be no common law larceny or embezzlement with respect to marital property which was co-owned by both spouses.

The Court reserved on the Motion for Summary Judgment and Motion to Amend, conducted a further pretrial conference and afforded the parties time to attempt to settle the Adversary Proceeding after the pretrial conference. However, the parties were unable to resolve the matter.


## DISCUSSION

### I.  SUMMARY JUDGMENT

Fed.R.Civ.P. 56, incorporated by reference in Fed.R.Bankr.P. 7056, "provides that summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled, as a matter of law, to a judgment in its favor." *In re Bennett Funding Group, Inc.,* 220 B.R. 743 (Bankr. N.D.N.Y. 1997), citing *Federal Deposit Ins. Corp. v. Bernstein,* 944 F.2d 101, 106 (2d Cir. 1991). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial. *In re Corcoran,* 246 B.R. 152, 158 (Bankr. E.D.N.Y. 2000), citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Once the moving party has met its initial burden, "the non-movant must then come forward with sufficient evidence on the elements essential to its case to support a verdict in its favor."

*Corcoran*, 246 B.R. at 158, citing *Celotex Corp. v. Catrett,* 106 S.Ct. 2548 (1986).

In deciding to grant or deny summary judgment, "the trial court must resolve all ambiguities and draw inferences in favor of the party against whom summary judgment is sought." *Bennett Funding Group, Inc.,* 220 B.R. at 751, citing *LaFond v. General Physics Servs. Corp.,* 50 F.3d 165, 171 (2d Cir. 1995); *Corcoran*, 246 B.R. at 156, citing *Reyes v. Delta Dallas Alpha Corp.,* 199 F.3d 626, 627-28 (2d Cir. 1999). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Repp v. Webber,* 132 F.3d 882, 889 (2d Cir. 1997) citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 586 (1986) (further citations omitted). Summary judgment is therefore inappropriate if any evidence exists in the record upon which a reasonable inference may be drawn in favor of the non-moving party. *Id.,* citing *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir. 1994).

## II.  **THE DOCTRINE OF *RES JUDICATA* AND COLLATERAL ESTOPPEL**[5]

Although the issue of nondischargeability of a debt is exclusively a matter of federal bankruptcy law, the law is nevertheless clear that the Bankruptcy Court must give collateral estoppel effect to those elements of a non-bankruptcy claim that are identical to the elements required for discharge and which were actually litigated and determined by a prior action. *Grogan v. Garner*, 498 U.S. 279, 284-85 n.11 (1991). Collateral estoppel precludes the relitigation of an issue of fact or law before a bankruptcy court that was previously determined by another court. *Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir. 1987), *cert. denied,* 484 U.S. 1007 (1988).

The policies underlying the doctrines of *res judicata* and collateral estoppel (claim and issue preclusion) include protecting litigants from the unnecessary burden of relitigating identical issues, promoting judicial economy, preventing inconsistent decisions, encouraging reliance on judicial proceedings and decisions, encouraging parties not to ignore proceedings but to

---

[5]     For a discussion of the preclusive effect of State Court judgments in bankruptcy courts, *See* Jeffrey Thomas Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy* (pts. 1 & 2), 58 AM. BANKR. L.J. 349 (1984), 59 AM. BANKR. L.J. 55 (1985). For a thorough discussion of the doctrines in bankruptcy courts where New York State law is involved, *See In re Cohen*, 92 B.R. 54 (Bankr. S.D.N.Y. 1988).

participate in them to conclusion and promoting comity between courts.

In an Adversary Proceeding respecting dischargeability, there are three elements to be determined. These elements are liability, damages and dischargeability. Although a non-bankruptcy court may have considered the issues of liability and damages, it may not rule on the ultimate question of dischargeability. The Bankruptcy Court, however, may adopt the findings of the non-bankruptcy court where they have been fully litigated, and such findings may apply to the issues of liability, damages and in some cases issues such as fraud, larceny, embezzlement and willfulness. *In re Magnafici*, 16 B.R. 246, 252-53 (Bankr. N.D.Ill. 1981).

In connection with the pending Motion for Summary Judgment, which only addressed Gattalaro's Section 523(a)(2)(A) cause of action, for the Court to make a determination of nondischargeability it must make a determination that the actions of the Debtor, which resulted in the Home Equity and Matrimonial Judgments, were the result of false pretenses, a false representation or actual fraud within the meaning and intent of Section 523(a)(2)(A) of the Bankruptcy Code.

The Second Circuit has held that what is required when considering the preclusive effect of a prior State Court judgment is not necessarily the full and complete litigation of an issue but

that there was a full and fair opportunity to litigate the issue in a prior action or proceeding.

### III. <u>**THE MOTION FOR SUMMARY JUDGMENT**</u>

#### A. <u>**The Home Equity Judgment**</u>

After reviewing the Findings and Judgment of Divorce entered by the State Court, this Court finds that the Debtor had a full and fair opportunity at the State Court trial to be heard on the issues of liability and damages and that the Home Equity Judgment is nondischargeable under Section 523(a)(2)(A) because the Debtor's actions resulted in his obtaining property from Gattalaro as a result of actual fraud.

The Findings, at pages 14-16, determined that: (1) the Debtor knowingly made false representations with the intent to deceive Gattalaro ("in no event would there be any withdrawals or draws taken against the home equity line of credit without the Plaintiff's advanced consent and approval"); (2) Gattalaro relied upon the knowingly made false representations ("in reliance on Defendant's inducements, representations and assurances, the parties did obtain a home equity line of credit"); and (3) Gattalaro suffered a loss as the proximate cause of the Debtor's actions ("in wanton disregard of Defendant's assurances and with actual fraud, the Defendant took advances or draws on the line of credit to the point of where there was $37,000.00 due and owing

**Page 15**

thereon, and by his fraudulent actions has dissipated and converted to his own use and benefit, the $37,000.00 in equity in the marital residence, which equity was agreed by the parties in their ante-nuptial agreement to be owned by the Plaintiff").

Although the Debtor has asserted that Gattalaro knew about the draws on the line of credit, the State Court, in its Findings at page 15, determined that, "This Court finds that the Plaintiff had no knowledge that the line of credit was being utilized in any manner by the Defendant."

Based upon: (1) the foregoing findings and conclusions of law, which determined that there was actual fraud; and (2) this Court's independent determination after reviewing them that these facts and findings indicate the presence of all of the Required Elements of Common Law Fraud, the Home Equity Judgment must be afforded *res judicata* and collateral estoppel effect, so that the Home Equity Judgment is determined to be nondischargeable pursuant to Section 523(a)(2)(A).

B.    **The Personal Injury Award**

After reviewing the Findings and Judgement of Divorce entered by the State Court, this Court finds that the Debtor had a full and fair opportunity at the State Court trial to be heard on the issues of liability and damages and that the Personal Injury Award is nondischargeable under Section 523(a)(2)(A) because the Debtor's

**Page 16**

actions resulted in his obtaining money and property from Gattalaro as a result of actual fraud.

The Findings, at pages 16-17, determined that: (1) the Debtor knowingly made false representations with the intent to deceive Gattalaro and obtain a portion of her personal injury settlement proceeds, which the State Court determined to be her separate property ("he would invest $15,000.00 of the personal injury proceeds in the stock market and pay the Defendant's brother $5,000.00 to buy out the brother's interest in a certain Crownline Boat"); (2) Gattalaro relied upon the knowingly made false representations ("the Plaintiff based on Defendant's false representations and inducements, agreed and authorized and provided the Defendant with the requested sum of $20,000.00 from said personal injury settlement proceeds"); and (3) Gattalaro suffered a loss as the proximate cause of the Debtor's actions ("Defendant never paid his brother the sum of $5,000.00 and further deposited or invested only the sum of $10,000.00 into the stock market by depositing the same into a joint Datek Brokerage Account.")

Based upon: (1) the foregoing findings and conclusions of law which determined that there was actual fraud; and (2) this Court's independent determination after reviewing them that these facts and findings indicate the presence of all of the Required Elements of Common Law Fraud, the Personal Injury Award, included within the

**Page 17**

Matrimonial Judgment, must be afforded *res judicata* and collateral estoppel effect, so that that portion of the Matrimonial Judgment is determined to be nondischargeable pursuant to Section 523(a)(2)(A).

### C.   The Restraining Order Awards

After reviewing the Findings and Judgement of Divorce entered by the State Court, this Court finds that the Debtor had a full and fair opportunity at the State Court trial to be heard on the issues of liability and damages with respect to the Restraining Order Awards included within the Matrimonial Judgment, but that those Awards are not nondischargeable under Section 523(a)(2)(A), because the Debtor's actions did not result in his obtaining money or property from Gattalaro as a result of false representations, false pretenses or actual fraud.

Although the findings and conclusions of law in the Findings and the Judgement of Divorce describe and find the Debtor's actions to be fraudulent misrepresentations, false pretenses, false representations and actual fraud, this Court does not find that all of the Required Elements of Common Law Fraud are present.  There are no findings that in violating the Restraining Order the Debtor made any false representations that Gattalaro relied upon that were the proximate cause of her loss.  The Debtor simply violated the Restraining Order, which caused Gattalaro to lose her interest in

the marital property in question. Therefore, to the extent that the Matrimonial Judgment includes the Restraining Order Awards, it is not entitled to *res judicata* and collateral estoppel effect with respect to Gattalaro's cause of action under Section 523(a)(2)(A). Furthermore, the Court does not find that the Debtor's actions which resulted in those Awards otherwise meet the requirements of Section 523(a)(2)(A) for nondischargeability.

Although the Debtor's actions that resulted in the Restraining Order Awards, described by the State Court as willful and contemptuous, may ultimately be determined by this Court to be nondischargeable under Section 523(a)(15), Section 523(a)(4) or Section 523(a)(6), as a willful and malicious injury within the standard set forth by the United States Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998) ("*Geiger*"), requiring a deliberate or intentional caused injury, the Motion for Summary Judgment is only based upon Gattalaro's cause of action under Section 523(a)(2)(A).

D. **The Brown and Company Award**

After reviewing the Findings and Judgement of Divorce entered by the State Court, this Court finds that the Debtor had a full and fair opportunity at the State Court trial to be heard on the issues of liability and damages with respect to the Brown and Company Award, but that the Award is not nondischargeable under Section 523(a)(2)(A), because the Debtor's actions did not result in his

**Page 19**

obtaining money or property from Gattalaro as a result of false representations, false pretenses or actual fraud.

Although the findings and conclusions of law in the Findings and the Judgement of Divorce describe and find the Debtor's actions to be fraudulent misrepresentations, false pretenses, false representations and actual fraud, this Court does not find that all of the Required Elements of Common Law Fraud are present. The proximate cause of Gattalaro's loss was that the Debtor withdrew money from the Brown and Company Brokerage Account but there were no findings that he falsely represented that he would not do so. The false representations the State Court found were regarding how he would invest the funds in the account, but there were no findings that the investments he made were the proximate cause of Gattalaro's loss. Therefore, to the extent that the Matrimonial Judgment includes the Brown and Company Award, it is not entitled to *res judicata* and collateral estoppel effect with respect to Gattalaro's cause of action under Section 523(a)(2)(A). Furthermore, the Court does not find that the Debtor's actions which resulted in that Award otherwise meet the requirements of Section 523(a)(2)(A) for nondischargeability.

Although the Debtor's actions that resulted in the Brown and Company Award may ultimately be determined by this Court to be nondischargeable under Section 523(a)(15), Section 523(a)(4) or

Section 523(a)(6), the Motion for Summary Judgment is only based upon Gattalaro's cause of action under Section 523(a)(2).

IV. **THE MOTION TO AMEND**

    A. **Amended Complaints and Relations Back**

        1. **Amendment**

        This separate issue before the Court is whether Gattalaro may amend the Original Complaint to include additional causes of action under Sections 523(a)(4) and 523(a)(6) to have the Restraining Order Awards included in the Matrimonial Judgment determined to be nondischargeable, and have those causes of action relate back to the date of the filing of the Original Complaint, which was timely filed pursuant to Rule 4007.

        As this Court stated in *In re Hector Rodriguez*, Chapter 7 Case No. 92-23388; *Michael Clary, Individually and d/b/a MCS Representatives vs. Hector Rodriguez*, AP No. 93-2076, (W.D.N.Y. September 30, 1993) ("*Rodriguez*"), Bankruptcy Rule 7015 incorporates Rule 15 of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 15(a) provides:

> Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.

**Page 21**

>Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

The allowance or denial of amendments to pleadings under Bankruptcy Rule 7015, and by incorporation Federal Rule of Civil Procedure 15, is within the discretion of the trial court. *Zenith Radio Corp. V. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). The Federal Rules of Civil Procedure provide that amendments to pleadings be liberally granted. *In re Tester*, 56 B.R. 208, 210 (W.D.Va. 1985). In the absence of undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment or futility of the amendment, the leave to amend should be "freely given" by the court. *Foman v. Davis*, 371 U.S. 178, 181-182 (1962).

### 2.   **Relation Back**

As the Court further stated in *Rodriguez*, the deadline for filing complaints to determine the dischargeability of a debt under Section 523(c) is governed by Bankruptcy Rule 4007. This rule provides,

**Page 22**

a complaint to determine the dischargeability of any debt pursuant to §523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to §341(a). . . On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

The 60-day period following the first date set for the meeting of creditors is not phrased as a statute of limitations but functions as such. *In re Barnes*, 96 B.R. 833, 836 (Bankr. N.D.Ill. 1989). The deadline protects debtors from post-discharge harassment by creditors claiming that their debts are not dischargeable on grounds of fraud. Id. at 837; *In re Figueroa*, 33 B.R. 298, 300 (Bankr. S.D.N.Y. 1983). Because of this, for creditors who have missed the deadline and seek untimely extension of their time to object to discharge, the deadline has been described as being "set in stone." *Barnes*, 96 B.R. at 837. Despite the harsh results, the court has no discretion to extend the deadline. Id. The rigid adherence to the deadline is based on the fact that Bankruptcy Rules 4007(c) and 9006(b)(3) reflect a considered determination that a final cut off date insuring debtors will be free after a date certain outweighs the individual hardship to creditors. *In re Klein*, 64 B.R. 372, 375 (Bankr. E.D.N.Y. 1986).

In this case, the Original Complaint was filed on October 20, 2004, and no motion for an extension of time to file a further complaint to set forth additional causes of action was made before the November 9, 2004 deadline. Therefore, if the amendment to add the causes of action under Sections 523(a)(4) and 523(a)(6) is to be considered timely, the amendment must be allowed to relate back to the filing of the Original Complaint.

As also discussed in *Rodriguez*, Federal Rule of Civil Procedure 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . .

Since in this case the relation back is not provided for by law, the amendment must fall under Rule 15(c)(2) to be allowed to relate back. Therefore, the cause of action must be found to arise out of the conduct, transaction or occurrence set forth in the original pleading. "The inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading." *Rosenberg v.*

*Martin*, 478 F.2d 520, 526 (2d Cir. 1973), <u>cert. denied</u>, 414 U.S. 872 (1973). As the Bankruptcy Appellate Panel for the Ninth Circuit has said in the case of *In re Dean*,

> The basic test is whether the evidence with respect to the second set of allegations could have been introduced under the original complaint, liberally construed; or as a corollary, that in terms of notice, one may fairly perceive some identification or relationship between what was pleaded in the original and amended complaints.

11 B.R. 542, 545 (9th Cir. BAP 1981), <u>aff'd</u>, 687 F.2d 307 (9th Cir. 1982). While it is still the rule that an amendment which states an entirely new claim for relief based on different facts will not relate back, if a pleading indicates sufficiently the transaction or occurrence on which the claim is based, the amendments which correct the specific factual details will relate back. 3 Moore's <u>Federal Practice</u> ¶15.15[3], pp. 15-198 to -208. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

### 3. <u>Findings</u>

The Motion to Amend is in all respects granted and the amendment will relate back to the date of the filing of the Original Complaint on October 20, 2004, for the following reasons:

(1) the Adversary Proceeding is still in the early stages, even though there has been extensive discovery and motion practice; (2) there is no indication of bad faith, undue delay or dilatory motive on the part of Gattalaro; (3) the Debtor was always aware that Gattalaro's claim that the Home Equity and Matrimonial Judgments were nondischargeable under Section 523(c), were based upon the extensive findings of fact and conclusions of law set forth in the Findings and Judgment of Divorce, which were made a part of the Original Complaint as well as the Adversary Proceeding at its earliest stages, so the causes of action sought to be added clearly arise from the same conduct, transactions and occurrences as set forth in the Original Complaint; (4) there is otherwise no undue prejudice to the Debtor by allowing the amendment; and (5) the Court, in its discretion, believes that the interests of justice will be served by allowing the amendment.

## CONCLUSION

The Home Equity Judgment and the Personal Injury Award that is included in the Matrimonial Judgment are both determined to be nondischargeable under Section 523(a)(2)(A).

The Restraining Order Awards and Brown and Company Award included within the Matrimonial Judgment are determined not to be nondischargeable under Section 523(a)(2)(A).

The Motion to Amend is in all respects granted, and it will relate back to the filing of the Original Complaint on October 20, 2004. The Debtor shall have twenty (20) days from the entry of this Decision & Order to interpose any Answer to the Amended Complaint's Section 523(a)(4) and Section 523(a)(6) causes of action that he may deem appropriate.

Nothing in this Decision & Order shall be deemed to prevent Gattalaro from bringing subsequent motions for summary judgment based upon her Section 523(a)(4) and/or Section 523(a)(6) causes of action as included in the Amended Complaint.

**IT IS SO ORDERED.**

_____/s/_____
HON. JOHN C. NINFO, II
CHIEF U.S. BANKRUPTCY JUDGE

**Dated:  July 25, 2005**